UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

CIVIL ACTION 2005 OCT 12 P 2:57

| George Logue | ] | Case No: 03-12637-DPW COUR |
| | ] | DISTRICT OF MASS. |
| Plaintiff | ] | |
| | ] | |
| v. | ] | |
| | ] | |
| Harvard University, et al. | ] | |
| | ] | |
| Defendant | ] | |
| | ] | |

## PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING HIS
## OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION

**Factual Statement** (local rule 56.1)

Plaintiff, George Logue, respectfully submits this Memorandum of Law and the
accompanying affidavit to support his Opposition to the summary motion submitted by
defendant's Harvard University Police Department, Marren, Healy, DiVergilio, and
Twomey (collectively, the "defendants"). The pleadings refer to plaintiff's complaint
(docket 7, attch, immediately following this text) which describes the violations and
inherent damages resulting from an unwarranted detention by the defendants. This
occurred in early January 2003, when plaintiff was on his way to the law school
bookstore in Harkness Commons and defendants stopped him in the building but prior to
reaching the bookstore. During the stop and through much of the incident, the defendants
exceeded all reasonable bounds to detain and search plaintiff. They intimidated plaintiff
with body and verbal language and excessive force, while others looked on, in order to
subdue and keep plaintiff in a humiliating position so that without consent, they could

1

search his belongings and person, and thereby inflict distress. (attch., plaintiff's affidavit, immediately following complaint)

Limited discovery has occurred where means were available (attch. A), however, and where no means have been available, to date no depositions have been taken.

### Factual Background

Certain facts are undisputed.

On January 3, 2003, plaintiff was passing through Harkness Commons, at Harvard University, to reach the Harvard Law School Bookstore located in that building.

While passing through Harkness, plaintiff was stopped, questioned, and searched with excessive force by defendant Marren and partner(s) while defendants Healy, DiVergilio, and Twomey looked on. Another plain clothes defendant, yet to be identified (per Court's original Scheduling Order), oversaw the second half of the stop.

The contested facts include: (1) the events leading up to defendant's entry, and search of plaintiff's person and belongings; (2) the length and scope of the search conducted and force used; and (3) the veracity of defendant's affidavit.

Claiming that plaintiff suffered no constitutional deprivations, defendants move for summary judgment on plaintiff's § 1983 claim on the ground that there is no dispute of material fact and, in the alternative, that they are entitled to qualified immunity.

Plaintiff counters that minimal disputed material issues of fact exist and indicate the duration of detention and the force used transformed the stop into a de facto arrest. [*Here, plaintiff wishes to note that while the complaint was not finally amended per the original scheduling order, it was due to deficiencies in defendant's automatic disclosures which failed to include all names and information,*]

### Deference Afforded Plaintiff under Rule 56 Standard

In accordance with Federal Rules of Civil Procedure, it is well established that, a party moving for summary judgment, be denied if a dispute as to the cases material facts exist; a motion for summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Nelson v. City of Cambridge*, 101 F. Supp. 2d 44, (2000); *Hinchey v. Nynex*, 144 F.3d 134, 140 (1st Cir. 1998). While plaintiff's intent to amend his complaint has been forestalled awaiting discoverable information, nonetheless, a disputed issue shall be deemed genuine "if the [available] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Strahan v. Frazier*, 156 F. Supp. 2d 80 (2001) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); The facts must be viewed "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Borschow Hospital & Medical Supplies, Inc. v. Cesar Castillo Inc.*, 96 F. 3d 10, 14 (1st Cir. 1996).

3

Because plaintiff's complaint is verified, the Court may treat it like an affidavit to the extent it satisfies the standards of Federal Rules of Civil Procedure 56. *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991); *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 94 (D. Mass. 1999); see also Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Thus, factual averments within the plaintiff's personal knowledge are equivalent to a counter-affidavit, whereas conclusory allegations do not pass muster under Rule 56(e) and hence must be disregarded. *Sheinkopf*, 927 F.2d at 1262. As a result, information and facts contained in plaintiff's complaint and affidavit suggest defendant's motion is so lacking in detail and fact so as to render it unworthy of judgment under the summary standard. Rather, a conclusion supported by evidence in the whole record file suggests a judgment for plaintiff.

**DISCUSSION**

I.    DEFENDANT'S DEFENSE FAILS IF THE STOP WAS UNLAWFUL

Defendant's summary motion raises some trite defenses and a record that is deficient of many facts of the incident. The lack of detail and accurate accounting of events is troubling. Plaintiff's complaint asserts a variety of tort claims against the defendants and their employer, the Harvard University Police Department. The complaint, awaiting full disclosure of entitled information, was intended to have been amended by this time to include the individually named defendants, including the "unidentified" plain clothes man (collectively, the "defendants"). Regardless, the causes in the complaint were presented with ample specificity - stating that the events which transpired during the stop and interrogation were unlawful, and are responsible for the unfortunate results of the unlawful stop and search.[1] Where minimally, several disputed material issues of fact exist, and plaintiff asserts violations of law were committed, defendants accordingly are not entitled to summary judgment of this complaint if the stop was unlawful.[2] The undisputed facts establish that it was unlawful.

II    THE STOP WAS UNLAWFUL

A. Principles of Liability

Detaining plaintiff under the circumstances violated his fourth amendment right to freedom from unreasonable seizures of his person. *See, Hall v. Ochs*, 817 F.2d 920 (1987); *Pierson v. Ray*, 386 U.S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967); *Monroe v. Pape*, 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1960). Well established are the options to recover damages from a state or local official who, while acting under color of

---

[1] The complaint makes reference to civil rights claims against the individual defendants and Police Department at Harvard pursuant federal and state laws (see ¶ 7 - 10 of the First and Third Causes). The lingering effects of the incident and the "process" of trying to correct it has left a trail of unwarranted and slanderous remarks in files that continue to defame, embarrass, diminish and tarnish plaintiff's good name and community status.

[2] One arguable exception may be in the Second Count of the First Cause, for "Negligent Entrustment" (ref. ¶ 2, second Count, First Cause of complaint) where defendants have refused to properly answer plaintiff's first Motion for Documents regarding this topic (attch A), and questions have arisen pertaining to

5

state law, commits a constitutional tort. 42 U.S.C. § 1983; see also *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). Force used by a police officer in an excessive manner against a detainee is such a tort. See *Graham v. Connor*, 490 U.S. 386, 395-396 & n.10, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989). If an officer fails to intervene in appropriate circumstances to protect a detainee from the excessive use of force by his fellow officers he may be held liable not only for his personal use of excessive force, but also for his failure to intervene. *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000) An employer is liable when its failure to properly train its officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact," and where a specific deficiency in training is the "moving force" behind a constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 388-389, 391, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989). A supervisory officer is subject to liability if the "supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others." *Barreto-Rivera v. Medina-Vargas*, 168 F. 3d 42 (1999) (quoting *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989), He may also be liable for the actions of his fellow officers where his "action or inaction [is] affirmatively linked . . . to that behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' *or* 'gross negligence amounting to deliberate indifference." Id. *See also Kibbe v. City of Springfield*, 777 F.2d 801 (1st Cir. 1985) (harm allegedly caused by policy of gross negligence in police training can meet standard of causation under 42 U.S.C. § 1983), *cert. dismissed*, 480 U.S. 257, 107 S. Ct. 1114, 94 L. Ed. 2d 293 (1987)

defendant's duty to supplement responses to discovery requests (Fed.R,Civ.P. 26(e)) and otherwise respond fully to Interrogatories and Request For Production of Documents in a manner required by Rules 33 and 34.

6

42 U.S.C. § 1983 provides that:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

### B. The Stop Lacked Probable Cause under § 1983

For a stop and search, amounting to a de facto arrest, to be lawful it must be based on reasonable grounds or probable cause. The probable cause test is an objective one where the Fourth Amendment, and the accompanying rule of exclusion, apply only to government action and where State officials have instigated or participated in the search. *Commonwealth* v. *Richmond*, 379 Mass. 557, 561-562 (1980); *Commonwealth* v. *Weiss*, 370 Mass. 416, 419-420 (1976); *Walter* v. *United States*, 447 U.S. 649, 656 (1980). *Burdeau* v. *McDowell*, 256 U.S. 465, 475 (1921); See generally 1 W. LaFave, Search and Seizure § 1.6 (1978); Annot., 36 A.L.R.3d 553 (1971). This rule follows from the origins and design of the Fourth Amendment as a restraint against arbitrary or lawless use of sovereign power, with its great potential for intrusion upon the privacy of individuals. See *Burdeau* v. *McDowell, supra* at 475; 1 W. LaFave, *supra* § 1.1 (a).

To maintain a cause of action under 42 U.S.C. § 1983, plaintiff initially must establish two essential elements:

(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived [plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States.

If these elements are shown, it leads to supporting a judgment in favor of plaintiff and countering the defendant's motion. In the first case, there is no contention that the color of law element has not been met.

In the second, the supporting documents indicate that defendants violated plaintiff's constitutional rights (Attch., ¶ 8 of complaint, 1st and 3rd Causes, and ¶ 2 of complaint, 2nd Cause, and ¶ 2 of plaintiff's affidavit,) by stopping and interrogating him, searching his person and belongings, and using excessive force in the process without a warrant, without probable cause, and without any affirmative consent. In doing so the defendants deprived plaintiff of rights and privileges guaranteed under § 1983. The undisputed manner of how it was conducted also indicates defendants meant to intentionally inflict emotional distress.

Both Harvard, as a private entity, and the supervisor, are vicariously liable under § 1983 in so far as a true employer-employee relationship exists between the organization, Harvard, and the individual defendant actors; how that liability is applied has become academic. It is now well established that the doctrine of Respondeat Superior is not applied through specific statutory language in § 1983, but rather by reference to state laws which specifically impose vicarious liability on entities for wrongs

8

of their employees. And 42 U.S.C.S. § 1988, where these facts warrant, provide for the application of Massachusetts state law so that vicarious liability may be imposed. Fifty-one Federal ALR 285, pp. 288-291 § 2[a]. (sect. III, p.17)


C. The Stop Lacked 'Articulable Facts'

Measures taken in detaining a suspect may, under the circumstances, be reconciled with the limited nature of a stop, or they may take on the arrest-like features such as forcible restraint or lengthy detention, and make the detention tantamount to an arrest, *Nelson, supra citing United States v. Acosta-Colon*, 157 F.3d 9, 15 (1st Cir. 1998). Defendant's action needs to be scrutinized as: (1) being justified at its inception, and (2) reasonably related in scope to the circumstances that initiated the interference. *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). It is well accepted that inquiries undertaken pursuant to a Terry stop must be reasonably related in scope to the justification for their initiation. *Nelson, supra (citing United States v. Ogden*, 703 F.2d 629, 634 (1st Cir. 1987) (internal citations omitted)). More plainly stated, To satisfy the first condition, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion," *.Terry* at 21 (1968). Defendant's affidavit suggests nothing more than an initial suspicion. (summary motion, defendant Marren's affidavit)


To satisfy the second hurtle, the scope of original circumstances of the stop need to be examined. Here, plaintiff had been directed by Harvard Personnel, and was proceeding in a peaceful and law abiding manner to the bookstore. Other than

defendant's suspicion nothing presented by them justifies the intrusion.    And each successive step defendant's took, the further detention, detailed inquiries, and searches with increased level of force, revealed no additional articulable facts to justify the unwarranted and intrusive stop. Instead the defendant's actions only served to further embarrass, humiliate and otherwise injure plaintiff.

Violation of Fourth and Fourteenth Amendments And Plaintiff's Civil Liberties

As plaintiff contends that a law enforcement officer used excessive force in the context of an arrest or investigatory stop, the claim may be analyzed under the Fourth Amendment's reasonableness standard *Graham v. Connor*, 490 U.S. 386, 394-395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989); *Dean v. City of Worcester*, 924 F.2d 364, 367 (1st Cir. 1991),  which is made applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. That standard "balances the public interest in effective law enforcement against the intrusiveness of the challenged police action in light of all the circumstances disclosed by the evidence." *Courville v. Town of Barre*, 818 F. Supp. 23 (1993) quoting *Dean*, supra at 367.

Plaintiff asserts that defendant's actions challenged his Fourth and Fourteenth Amendment rights, therefore it must be shown that a dispute exists as to a material issue of fact and that the Fourth Amendment was violated. Obviously, defendant Marren had a right and duty to investigate his "suspicion" as part of his job and as an employee of Harvard.  However, his response and actions and the actions of the other defendants far exceeded anything remotely called for in order to quell that suspicion.

10

Plaintiff plainly states he had a purpose and reason for being in Harkness Commons, and that he had been directed there by other Harvard Personnel from the Harvard Bookstore (attch., ¶ 8 of complaint, 1ˢᵗ and 3ʳᵈ Causes, and ¶ 2 of plaintift's affidavit). As plaintiff made this known to the defendants in the opening minutes of being stopped, the elongated detention and search were uncalled for and should not have occurred. On this point alone, concerning the level of detail as to what exactly transpired, and where the opposing affidavits diverge as to the length of the stop and the amount of force used, a material issue of fact exists and defendants are not entitled to judgment.

Where the stop did not cease, plaintiff was in the position that any reasonable person would have been of the feeling that he was not free to leave; he had been stopped by a show of authority. The seizure, triggering the protections of the Federal Constitution's Fourth Amendment, occurred when defendants, by means of show of authority and then physical force, restrained the liberty of plaintiff. (attch., ¶ 8, 1ˢᵗ and 3ʳᵈ Causes, and ¶ 2, 2ⁿᵈ Cause of plaintiff's complaint, and ¶ 2 of plaintiff's affidavit) Now, it is understood Harvard's general policy as a private institution is that its property is reserved for students and faculty. However, defendant's motion fails to also note accepted policy that the University permits the public limited use of some of its facilities. Plaintiff had merely been using one such facility, and then been directed by other Harvard personnel as to where he could purchase a specific type of paper; at the law school bookstore in Harkness Commons. Id.

11

There has been no reasonable suggestion that, before stopping plaintiff, Marren had any probable cause other than plaintiff appeared "suspicious." (defendant's affidavit, summary motion). Contrary to defendant Marren's sworn statements, the encounter was anything but small, and plaintiff had given no verbal or implied consent regarding searches. Hence, defendants had no grounds to detain and search him for reason of involvement in any crime. Beyond their initial questions, which plaintiff answered directly and amicably, and under the standards applied to ordinary police officers, defendants were not entitled to conduct even a cursory search of plaintiff. See, e.g., *Commonwealth* v. *Loughlin*, 385 Mass. 60, 62 (1982); *Commonwealth* v. *Silva*, 366 Mass. 402, 404-407 (1974); *Robbins* v. *California*, 453 U.S. 420, 423-429 (1981) *Carroll* v. *United States*, 267 U.S. 132, 155-156 (1925). Yet, while unreasonably detaining plaintiff for more than an hour, Marren and defendants found themselves pillaging through belongings of plaintiff, who upon first being asked by the defendants for his permission, had expressly forbade the intrusion twice. He even went so far as to ask "why" it was necessary the first time and if he could consult an attorney. In the next instance he found himself forced onto his knees as others watched a second time while the defendants searched his other bag. ( ¶ 8, First and Third Causes, plaintiff's complaint, and ¶ 2 of plaintiff's affidavit)

The needs of law enforcement must be balanced with the imperative that an investigatory stop be only as intrusive as is necessary to accomplish the task. *Nelson*, supra (2000) citing *United States v. Sharpe*, 470 U.S. 675, 685, 84 L. Ed. 2d 605, 105 S. Ct. 1568 (1985). The detention far exceeded any stop which, giving defendants a lot of

leeway, somehow had initially seemed like a necessary intrusion. The defendan's inquiry to confirm or dispel their suspicions had been accomplished quickly during t e few initial minutes when they detained plaintiff. (attch., ¶ 2 of plaintiff's affidavit)

Plaintiff had posed no threat to the safety of any the officers or the public at large. He did not actively resist being detained or questioned at the inception of the stop, an I even as the defendants pressed, he did not attempt to evade or take flight from the further unwarranted detention and search, except as to express his outrage and that he did no believe further search was necessary. (attch., ¶ 2 of plaintiff's affidavit) Yet, further excessive force followed as a supervisor in plain clothes looked on. Id.

Defendants argue, based on a false and lacking description of the events, that the stop was permissible and that the Court should grant summary judgment to them because there is no liability under a theory of respondeat superior, referring specifically to the University. (defendant's summary motion) Setting the University aside for a moment, what of the plain clothes supervisor who stood and watched much of the later incident unfold without so much as a word until the time of exiting?

The plain clothes supervisor is liable for his own acts or omissions shown by the 'affirmative link' between Marren and the supervisor, 'whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" (attch., ¶ 2g of plaintiff's affidavit) *Carmona, supra* (1st Cir. 2000) (quoting *Camilo-*

13

*Robles v. Zapata*, 175 F.3d 41, 43-44 [1st Cir. 1999]); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989).

While throwing up inaccurate accounts as to why the individual defendants have yet to be named in a further amended complaint (in fact, due to their own deficient automatic disclosures) defense counsel asserts that plaintiff has no evidence to support the individual defendant's liability. However, plaintiff has presented adequate evidence in his verified complaint and affidavit. Plaintiff's complaint and affidavit show that the unidentified supervisor, **Marren, Healy, DiVergilio, and Twomey** not only were deliberately indifferent to the unconstitutional stop, but also that they in fact authorized it. This is sufficient evidence to survive summary judgment. See *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 902 (1st Cir. 1988) (holding that supervisory encouragement of constitutional violation gives rise to supervisory liability).

Another perspective with the reasonableness standard suggests any investigation by defendants should only have been a legitimate means of protecting Harvard's property and its occupants, and reasonable in light of the circumstances surrounding it. Cf. Restatement (Second) of Torts § 278 (1965). Again, reasonableness depends in part on the expectations engendered by the particular setting. If the employer has maintained the private character of his property, those who use it must anticipate and accept supervision. However, if, and as in this instance the employer, Harvard, has exposed it's premises and chattels to semi-public use, the sense of private prerogative to control its users is much diminished. Id.

14

Plaintiff suggests that defendants should have considered the manner chosen and the extent to which they carried out their stop and inquiry. **Marren's, Healy's, DiVergilio's, and Twomey's** failure to employ available, less intrusive and less forceful alternatives, particularly where plaintiff had expressed concern over the length of the stop, and their choice to look into his personal belongings while they intimidated him and forced him onto his knees, suggest that each of the defendant's chosen course of action and the methods employed were totally unnecessary and unreasonable for the sake of dispelling the defendant's initial suspicions. These actions by the defendant's violated "clearly established" rights of plaintiff under federal and state law.

Again, these facts are clearly stated in plaintiff's complaint and affidavit, and diverge from defendant's affidavit which fails to mention or deny many of the specifics which occurred during the stop. Marren's sworn affidavit neglects to accurately and fully disclose the events which took place on January 3, 2003. Minimally, a dispute as to a material issue of fact exists where defendant's lack of disclosure and sparse account of their actions plainly fail to account for the unreasonable stop and search. The supported reasoning thus far suggests defendant's summary judgment motion should be denied, and further, that consideration should be given to these arguments which, in fact indicate undisputed evidence exists to grant summary judgment in plaintiff's favor.

### D. Allegations of Trespass as Reasonable Grounds Are False

For similar reasons, plaintiff asserts in no way could he have been at fault for trespassing. The applicable statute for criminal trespass is Massachusetts General Laws c. 266, § 120. It provides:

15

Whoever, without right enters or remains in or upon the . . . buildings . . . of another . . after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon . . . shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both . . .

Plaintiff had arrived to visit a retail outlet at the Harkness Commons location by direction of Harvard University personnel. He had never been to the law bookstore before, so there is no way he could have received a prior warning not to visit it. And an allegation that notice is given based on the general posting on the entranceway is unfounded and nothing but an attempt to divert attention away from the real issue.

The defendants do not, however, account for this Court's present holding where plaintiff had a right under The Constitution and Massachusetts Law to peacefully visit a retail outlet in what now must be interpreted as a private building, and despite having received additional license from other Harvard personnel. Property owners may not rely on the trespass statute to circumvent constitutional protections. *Strahan, supra* (2001).

"The words 'without right' in the context of the historical concept of trespass can only mean: without any legal right; without any right, permission or license recognized by law

16

as permitting an entry into the area described in the statute. . . . The concept legal right in

the context of today's constitutional developments includes any right of the plaintiffs

. . . found in the Constitution of the United States."

"Here we do not have a statute purporting to bar exercise of constitutional rights. As used

in the trespass statute, the words 'without right' expressly save constitutional rights."

*Hurley v. Hinckley*, 304 F. Supp. 704, 710 (D. Mass. 1969) (Murray, J.), aff'd sub nom.

*Doyle v. O'Brien*, 396 U.S. 277, 24 L. Ed. 2d 469, 90 S. Ct. 603 (1970) (per curiam); see

also *Commonwealth v. Wolf*, 34 Mass. App. Ct. 949, 951, 614 N.E.2d 679 (1993) ("The

words 'without right' in the trespass statute . . . connote the absence of any right,

permission, or license recognized by law as permitting an entry into an area described by

the statute." [citing *Hurley*, 304 F. Supp. at 710]); *Commonwealth v. Lapon*, 28 Mass.

App. Ct. 681, 683, 554 N.E.2d 1225 (1990) ("No doubt the words 'without right' . . .

encompass constitutional rights . . . ." [citing *Hurley*, 304 F. Supp. at 710-11]). Id.

## III    DEFENDANTS ARE LIABLE UNDER STATE LAWS AS WELL

Plaintiff also identifies violations of rights under M.G.L. c.12, § 11H and § 11I,

the Massachusetts Civil Rights Act ("MCRA"), loosely identifying the violations in his

complaint and in response to defendant's interrogatories (attch., ¶ 2, second Cause of

complaint, and ¶ 10 of Plaintiff's Response to First Set of Defendant's Interrogatories,

Attach A) Although the complaint (in its current form) lacks several details, due from

defendants incomplete disclosure, it contains sufficient information so that it may be

17

construed to state the violations of the appropriate constitutional provision. *Haines v Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) (holding that pro se litigants are entitled to liberal construction of their pleadings); *Strahan v. Coxe*, 127 F.3d 155, 158 n.1 (1st Cir. 1997) (citing Haines).

Section 11I provides:

Any person whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth, has been interfered with . . . as described in section 11H, may institute a civil action . . .

Section 11H requires that the interference with rights be "by threats, intimidation or coercion."

The Supreme Judicial Court of Massachusetts ("S.J.C.") has held that "the Legislature intended to provide a remedy under G.L. c.12, § 11I, coextensive with 42 U.S.C. § 1983 . . therefore, the Massachusetts Civil Rights Act ("MCRA") should be read in harmony with 42 U.S.C. § 1983. *Nelson*, supra. citing *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 822-23, 473 N.E.2d 1128 (1985) (MCRA is "coextensive with 42 U.S.C. § 1983 . . ., except that the Federal statute requires State action whereas its State counterpart does not"). Plaintiff clearly identifies these allegations in his complaint and affidavit (¶ 8 First, Third Cause, and ¶ 2 and 3, 2nd Cause of complaint, and ¶ 2 d, e, g, and h of plaintiff's affidavit) Where defendants have failed to accurately and completely

18

describe the events as they took place, they have neither referred to those specific facts or denied them, and therefore have failed to introduce any evidence, material in nature, that would indicate a dispute as to these facts, and regarding these state law violations.

Defendants also violated the Massachusetts right to privacy statute, M.G.L. c. 214 § 1B, and on common law. Here, plaintiff had a constitutionally protected reasonable expectation of privacy. M.G.L. c. 214 § 1B provides:

A person shall have a right against unreasonable, substantial or serious interference with his privacy. . . .

Defendants clearly violated plaintiff's right to privacy when surpassing that point in the detention where preliminary questions had been answered, and that were sufficient to quell defendants, so called, suspicions. There was no constitutionally adequate basis for the sequence of police actions involving the stop, detention, and search of plaintiff's person and his belongings, and in which nothing was discovered, thus meeting the measure of a constitutional violation of rights. Both art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution.

Recently recognized in our State constitutional law, in *Commonwealth v. Wilson*, 441 Mass. 390, 396, 805 N.E.2d 968 (2004), the Supreme Judicial Court considered the issue of "first impression [concerning] whether the 'plain feel' doctrine jives with the requirements of art. 14." Id. at 392. The court determined it does, and held that, under

19

State constitutional search and seizure law (consistent with Federal law) "a police officer may also seize non threatening contraband discovered during a Terry-type frisk if the 'police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity [as contraband] immediately apparent.'" Id. At 396, quoting from *Minnesota v. Dickerson*, 508 U.S. 366, 124 L. Ed. 2d 334, 113 S. Ct. 2130 (1993). As such the plain feel doctrine is limited in that, "if the officer must manipulate or otherwise further physically explore the concealed object in order to discern its identity, then [plain feel is inapplicable and] an unconstitutional search has occurred." *Commonwealth v. Wilson*, supra, citing *Minnesota v. Dickerson*, 508 U.S. at 378-379.

In the context of searches, the plain feel doctrine is synonymous to the plain view doctrine. *Commonwealth v. Wilson*, 441 Mass. at 397. Therefore, under both the plain view and the plain feel *exceptions* to the constitutional mandate of a warrant, "[1] if police are lawfully in a position from which they view [or feel] an object, [2] if its incriminating character is immediately apparent, and [3] if the officers have a lawful right of access to the object, [then, (emphasis added)] they may seize it without a warrant." *Commonwealth v. Santana*, 420 Mass. 205, 211, 649 N.E.2d 717 (1995), quoting from *Minnesota v. Dickerson*, 508 U.S. at 375. Where there was no "object," it is impossible to comprehend how the defendant's arrived at dismantling plaintiff's belongings other than to satisfy some manifested sick sense of curiosity, and in which they obviously derived pleasure in agitating and inflicting stress on plaintiff.

Finally, and aside from determining when the complaint will ever be permitted to specifically name *all* of the individual defendants, the defendants argue that the defendant institution, "Harvard" may not be sued on the theory of Respondeat Superior under § 1983. (defendant's motion) For the reasoning begun above (section B), it most certainly is liable under § 1983 (1988) by virtue of state law and the State act. The MCRA forbids "any person or persons" from interfering by threats, intimidation, or coercion with another's enjoyment of his or her civil rights. G. L. c. 12, § 11H. The Legislature has directed that "in construing statutes . . . unless a contrary intention clearly appears . . . [the word] "person" . . . shall include corporations, societies, associations and partnerships" (emphasis added). G. L. c. 4, § 7, Twenty-third. *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, (1999) See also *Commonwealth v. ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 77, 596 N.E.2d 376 (1992). There is nothing in the MCRA to indicate clearly that the Legislature did not intend the term "person" to take on the statutory definition appearing in G. L. c. 4, § 7, Twenty-third. In addition to the individually named defendants, "Harvard University", a corporation, is a "person," as that word is used in the MCRA.

Further, *Sarvis*, supra (1999), suggests that a corporation, such as Harvard, is a creature of the law, a "separate and distinct legal entity . . . [that] can only act through its agents," *Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66, 679 N.E.2d 540 (1997), making its liability "necessarily vicarious." *Commonwealth v. L. A. L. Corp.*, 400 Mass. 737, 743, 511 N.E.2d 599 (1987). It is axiomatic indeed that corporations may be vicariously liable for