the acts of their agents. And a corporation "may be held vicariously liable for the intentional tort of an agent . . . committed within the scope of employment," *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 404, 558 N.E.2d 958 (1990), just as a corporation may be held vicariously liable for the crimes of its agents acting on its behalf and in the scope of their employment. See *Commonwealth v. Beneficial Fin. Co.*, 360 Mass. 188, 256-258, 275 N.E.2d 33 (1971), cert. denied sub nom. *Farrell v. Massachusetts*, 407 U.S. 910, 32 L. Ed. 2d 683, 92 S. Ct. 2433, and sub nom. *Beneficial Fin. Co. v. Massachusetts*, 407 U.S. 914, 32 L. Ed. 2d 689, 92 S. Ct. 2433 (1972).

Moreover, a corporation can be held vicariously liable pursuant to G. L. c. 93A, for the conduct of it's agent within the scope of employment "if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer." *Wang Labs., Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859, 501 N.E.2d 1163 (1986) (citations omitted).

Prior court decisions have impliedly recognized that a plaintiff may state a cause of action under the MCRA against a private employer based on respondeat superior. See *Pheasant Ridge Assocs. Ltd. Partnership v. Burlington*, 399 Mass. 771, 506 N.E.2d 1152 (1987); *O'Connell v. Chasdi*, 400 Mass. 686, 511 N.E.2d 349 (1987); *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 522 N.E.2d 975 (1988). As presented in his complaint, plaintiff therefore asserts Harvard is vicariously liable under the MCRA for civil rights violations committed by its agents acting in the scope of its employment. Id.

Without going into a large amount of further detail at this juncture, it should be mentioned at least, that defendants were in violation of additional state laws, including the Civil Rights Act of 1964, Massachusetts Equal Rights Act, and criminal M.G.L. c. 272, §§ 92A, 98, and 98A. enforceable primarily through the remedial scheme of c. 151B. Here defendant's violated the Massachusetts Public Accommodations Law that prohibits the exclusion and discrimination of the provision of services in § 92A and § 98 by defining places of public accommodation to include "any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public." (referring to public use, and the prior discussion, p. 14, supported by Restatement (Second) of Torts § 278 (1965)) The record herein supports the plaintiff's allegations of defendant's violations and this further attests to preclude any summary Judgment.

## Negligent Entrustment

Plaintiff also alleged Negligent Entrustment, implying that Harvard, by entrusting these defendants, was negligent in their hiring, retention, training and supervision (ref. ¶ 2, second Count, First Cause of complaint, and ¶ 1-14 of Plaintiff's Motion for Production of Documents, attch. A), and that Harvard is liable because it failed to properly screen or train defendants in their constitutional obligations to the public. Defendants have refused to answer plaintiff's discovery pleadings sufficiently, and in accordance with The Federal Rules of Civil Procedure, Rules 33 and 34. (ref. defendant's responses to ¶ 1-14 of Plaintiff's Motion attch A) The inquiries were expressly searching for discoverable evidence pertaining to the individual defendant's, as well as Harvard's, normal policies, performance, actions, and omissions of duty that indicate failed

23

screening processes or lack of training of defendant employees, that resulted in "deliberate indifference" to the constitutional rights of persons who deal with the police. Where plaintiff has a burden to produce evidence to prove that defendant Harvard was deliberately indifferent in its failure to properly hire, train, and promote entrustment, he is entitled to proper responses to his discovery inquiries. Though, for the sake of brevity, and concerning these pleadings, he need not do so to defeat a motion to dismiss. *Britton v. Maloney*, 901 F. Supp. 444, (1995) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993); *McGrath v. MacDonald*, 853 F. Supp. 1, 4-6 (D.Mass. 1994).

## IV    DEFENDANTS SHOULD NOT BE ENTITLED TO IMMUNITY

Plaintiff contends that defendants should not be entitled to any claims of immunity under a qualified doctrine such as that of *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). Courts must evaluate whether an official reasonably should have known that his actions would violate plaintiffs' rights. *Perez v. Rodriquez Bou*, 575 F. 2d 21 (1978) Applying *Harlow*, one is "concerned not with the correctness of defendants' determination, on the one hand, nor their subjective state of mind, but [with] the 'objective reasonableness' of the [officials] conduct. . . . *Harlow* demands not prescience, but objective good faith." *Hall* (1987) supra at 924 (quoting *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1193 (1st Cir. 1986)). In *Pierson* (1967) supra, the Court held that police officers were, at most only entitled to the same qualified immunity in civil rights actions that they enjoyed in common law tort actions. However, this would require that each of the defendants establish that their actions were

24

carried out in the good-faith belief that were reasonable under existing circumstances of its lawfulness.[3] Where they were not, in this instance, the defendants have no immunity and are liable under the MCRA for their discretionary acts because they violated rights under Federal and State constitutional or statutory law that was clearly established at the time. ref. Harlow, supra (1982)

Defendant Marren, and his fellow defendants, pursuant to the arguments presented above and for reasons summarized below, should not be entitled to a qualified immunity defense. For the sake of this argument, requiring defendants to establish that their actions in directing the detention and unauthorized search of the plaintiffs' belongings and person, and that it was done in the good faith belief as to its lawfulness, and that such a belief was reasonable under all of the circumstances then existing, only yields a defense conflicting with the facts. *Wood v. Strickland*, 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); *Skehan v. Board of Trustees*, 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied*, 429 U.S. 979, 50 L. Ed. 2d 588, 97 S. Ct. 490 (1976) Even by removing the defendant's veil of malicious intent, and giving them the benefit of the doubt regarding their real intentions, subjective good faith in one's conduct is not sufficient to protect an official from civil rights liability. *Perez,* supra citing *Schiff v. Williams*, 519 F.2d 257, 261 (5th Cir. 1975). And the presence of such a defense, in the context of the present record, establishes another genuine dispute as to a material issue of fact, and therefore, at a minimum, should preclude summary judgment. *But cf. Procunier v. Navarette*, 434 U.S. 555, 98 S. Ct. 855, 55 L. Ed. 2d 24, 46 U.S.L.W. 4144 (1978) (Held state prison

---

[3] One Am Jur 2d section 4 and 5, Abuse of Process; General requisites- improper, willful act

official entitled to qualified immunity as a matter of law in the particular factual context of that case. Entirely distinguishable on its facts from the instant case).

Again, it must be stated that the bulk of material evidence presented in this opposing pleading, with the incomplete "telling" by defendants verses the overwhelming level of factual detail provided by plaintiff's verified complaint and affidavit, suggest nothing less than a judgment in plaintiff's favor.

Contrary to any lawful pretense, the defendants not only made what amounted to a false de facto arrest, but have also permitted the stop, its record, and the inherent repercussions to go on. Where there was no probable cause, articulable facts or even reasonableness to the stop and detention, under the relatively normal circumstances, where plaintiff had been doing nothing that could have been construed as unlawful, where he had presented no threat as he made his way to the bookstore, or to the defendants upon being stopped, and where he openly and honestly answered the defendants early questions without hesitation, the ensuing and continued detention was unlawful and therefore, no qualified immunity exists. The defendants may be held liable under § 1983 (1988), and the state law violations, not only for each of their own actions, but also for each ones failure to have intervened in such circumstances so as to prevent arrestee from improper actions of their fellow defendant officers.   U.S.C.A. Const. Amend. 4; 42 U.S.C.A. § 1983. *Wilson v. Town of Mendon*, 294 F. 3d 1 (2002).

## V    INHERENT RESULTS OF ACTIONS SUPPORT THE CLAIM OF DISTRESS

Finally, plaintiff's claim for intentional infliction of emotional distress has shown that the defendant officers conduct was "extreme and outrageous" and beyond all bounds of decency, and utterly intolerable in a civilized community." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). The available evidence proves that the stop, detention, and events that followed were made without probable cause, articulable facts or even reasonableness of good intention. Rather, it shows the individual defendant's acted with malice and oppression. The defendant officers and department failed to substantiate any truthful cause, and the ensuing course of events that followed, and the effect that each of these has had on plaintiff's personal and professional life, all illustrate extreme and outrageous conduct beyond all bounds of decency, and which should be utterly intolerable in a civilized community.

"Repeated harassment may compound the outrageousness of incidents which taken individually, might not be sufficiently extreme to warrant liability for the infliction of emotional distress." *Boyle v. Wenk*, 378 Mass. 592, 392 N.E. 2d 1053 (1979), Bishop, Prima Facie Case, Fourth Edition, 17A M.P.S. § 26.2 et seq., 26.4.

Here, the record is particularly telling. Defendant Marren, his partner, and with the other defendants looking on, and after all reasonable suspicions had been disposed of with the determination of a "clean" cory, continued to question plaintiff regarding the improper incident at it's sister school just two weeks earlier! Even setting aside the improper manner in which this information was obtained (attch affidavit, para 2c), for the

27

defendants then to use it to further detain plaintiff, and loudly discuss it in public as on looking students and friends passed by, only attests to the outrageousness of the conduct and situation. It is not simply plaintiff's unfounded or arbitrary conclusion, based on "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987), and where he has the burden to produce evidence to prove that defendant Harvard was deliberately indifferent. Plaintiffs suffered gross indignities and public humiliation of the kind *associated* with blatant racial, religious, sexual or political discrimination. For what? Wearing his hair too long; having a disheveled appearance?

Authority suggests that "in a civil rights action a plaintiff who proves only an intangible loss of civil rights or purely mental suffering *may* . . . be awarded substantial compensatory damages." (Emphasis added.) *Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir. 1973). The length of the stop, and the lengthy minutes defendants spent conversing with their department, as to what had happened in the prior incident, even though plaintiff's cory had been determined clean, speaks to the level of malicious intent. The scene: the defendant's asking their department, to wit, "Call MIT and find out what transpired there," and then keeping plaintiff confined while awaiting an answer, illustrates defendants crazed need or desire to impart angst.  Their actions, upon learning of some of those details, by exposing plaintiff to even further continued detention and even more extreme intimidation and violation of his rights, by forcing him onto his knees in that public space, and conducting yet another unwarranted search of his other carry-all, and after he had expressly forbade it (attch affidavit, para 2g), rises to the level of

28

outrageous. Moreover, by publicly accusing him, again, of a crime, and rebuking him while in a subdued position before all who passed, only speaks to conduct considered to be "beyond all possible bounds of decency , ," and that should be considered "utterly intolerable in a civilized community." *Agis,* supra (1976)) Having Taunted and furthe exposed plaintiff to ridicule at, by then, a heightened anxiety ridden scene, and by using the irrelevant information (regarding the prior incident) that had been improperly extracted from him, illustrates the defendant's conscience intent to inflict emotional distress and that they knew, or should have known that emotional distress was the likely result of their conduct. *Grant v. John Hancock Mut. Life Ins. Co.,* 183 F. Supp 2d 344 (2002).

## Conclusion

Wherefore, disputed issues of material fact exist, defendant's motion should be denied.

Respectfully submitted,

_____

October 12, 2005
Date

Plaintiff's Complaint

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | | CIVIL ACTION |
| George Logue | l | |
| | l | CASE NO. 03-12637 |
| Plaintiff | l | COMPLAINT FOR DAMAGES |
| | l | Civil Rights Violation - |
| v. | l | Wrongful Detention, Illegal Search |
| | l | |
| Harvard University | l | |
| | l | |
| Defendant | l | (UNLIMITED CIVIL CASE) |
| | l | |
| | l | |

Comes now the plaintiff with the issues in this revised complaint and the causes described herein, pursuant to U.S.C. Title 42.

## FIRST CAUSE
(Wrongful Detention & Illegal Search)

Plaintiff alleges:

### Parties

1. Plaintiff is currently a resident of Middlesex County, Massachusetts and a citizen of the United States.

2. Plaintiff is ignorant of true names of the defendant officers sued herein, inclusive, and therefore sues these defendants by such fictitious names according to their capacity of employment. Plaintiff will amend this complaint to allege their true names when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

3. Defendant officers 1 - 4 are, and at all times herein mentioned were, police officers employed by their codefendant Harvard University (hereafter Harvard), Massachusetts Avenue, Cambridge, Massachusetts, to protect the premises, people, and property therein.

4. Defendant, Harvard being a corporation, and at all times herein mentioned was duly organized and existing under the laws of the Commonwealth of Massachusetts. Harvard has it's principal place of business in Cambridge, Middlesex County, Massachusetts, and is, and at all times herein mentioned, was regularly engaged in providing University instruction and research.

5. Defendant officers 1 - 4 at all times herein mentioned were the agents and employees of their codefendant Harvard, and in doing these things hereinafter alleged were acting under the direction and approval, express or implied, of their employer, Harvard. Plaintiff is informed and believes, and thereon alleges that the named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiffs damages as herein alleged were proximately caused by their conduct.

1

Jurisdiction

6.  A notice of this impending claim was presented to the immediate governing body of each
    department involved, as well as the President of the University. Copies of the notice are
    annexed as "A." This court has jurisdiction over this matter, pursuant to title 42 U.S.C.,
    and plaintiff beseeches this court in order that an impartial forum is available.

Facts

7.  On or about October 14, 2002, plaintiff was visiting the Harvard Law Library at Harvard
    University, whereupon it was established by inquiry to the librarians, that he was
    welcome as a guest to use certain resources for his personal research. Plaintiff asked if
    there were any other requirements at the library, whereupon he was informed that for the
    resources he intended to use, there were no other requirements. Since that time, plaintiff
    had visited Harvard several times a week to utilize resources at the library, including, the
    bookstores and on January 2, 2003, and while visiting the Harvard Coop, plaintiff was
    searching for legal paper on which he intended to print legal documents to be submitted
    to the Court. A sales representative informed plaintiff that, "the only local store that sells
    that paper is the bookstore in Harkens Hall at Harvard Law School."

8.  On January 3, 2003, at approximately 9:45 a.m., defendant officers 1 and 2, and each of
    them, stopped, detained, threatened and, otherwise began to harass plaintiff while he was
    walking peaceably and in a law abiding manner through the lobby of, and while en route
    to the Harvard Law School bookstore in Harkens Hall. The officers, and each of them,
    questioned his identity and reason for being at Harvard. Plaintiff explained the research
    he was doing and his understanding that it was okay for him to be there. Defendant
    officers, and each of them proceeded to keep plaintiff, by force and threats, and against
    his will at this location, accused him publicly of having committed a crime of trespass
    and began to question him further regarding his reason for being in Harkens Hall and on
    Harvard property. Plaintiff, in fear of being wrongfully accused of a crime, at first
    requested counsel and was denied such by officers 1 and 2, who called for backup.
    Defendant officers 3 and 4 arrived, and each of them continued to detain plaintiff, forcing
    him to remove his backpack, remain seated, and answer questions by intimidating him
    for more than an hour. Defendant officer 2 and 3 departed shortly thereafter. Defendant
    officer 1 asked if he could look in plaintiff's grocery bag. Upon plaintiff's denial,
    officers 1 and 4, and each of them, forced plaintiff to get on his knees as students passed
    by, began to search his belongings, remove and examine articles, and publicly accuse and
    rebuke him, again, of breaking the law by possessing illegal substances. Plaintiff denied
    the allegation. Defendant officers, and each of them searched his belongings without
    probable cause, violating his fourth amendment right which states in part, "…the right of
    the people to be secure in their persons, houses, papers, and effects against unreasonable
    searches and seizures." When officers realized that the items were of no consequence,
    they threatened plaintiff never to return to the Harvard campus and told him to leave. By
    committing these acts, defendant officers, and each of them, denied plaintiff of his civil
    liberties, by acting under color of state law, 42 U.S.C.S. 1983 (1988).

9.  The unlawful conduct of the defendant police officers, and each of them, deprived the
    plaintiff of his personal liberty, where he was humiliated and embarrassed in public, and
    as a result, suffered great pain and anguish of the mind. Further, as a proximate result, of
    the acts of the defendants, plaintiff has suffered great damage to his reputation and
    embarrassment in his community, all to his damage.

10. The acts of defendants, and each of them, as herein alleged were willful, wanton,
    malicious, and oppressive, and justify the awarding of punitive damages.

2

## SECOND COUNT
### (Negligent Entrustment)

1. Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1 - 10, inclusive, of the First Count.
2. Defendant Harvard University negligently hired and entrusted defendant police officers 1 - 4 to protect its property and premises and to investigate possible harm to its property or premises and to perform other related functions.


WHEREFORE, plaintiff prays judgment against defendant as follows:

1. For general damages according to proof;
2. For punitive damages;
3. For reasonable attorney's fees;
4. For interest and as allowed by law;
5. For cost of suit herein incurred; and
6. For such other and further relief as the court may deem proper.

July 14, 2004

3



UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION

George Logue

   Plaintiff

  v.

Harvard University

   Defendant

CASE NO. 03-12637
COMPLAINT FOR DAMAGES
Civil Rights Violation -
Assault & Battery

(UNLIMITED CIVIL CASE)

## SECOND CAUSE
### (Assault & Battery)

Plaintiff alleges:

1. Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-10, inclusive, of the First Count of the First Cause.
2. Defendant's egregious acts, and each of them, were intentional, unconsented, and harmful to plaintiff, were unreasonable and unnecessary for the purpose of any investigation, and violated the scope of Massachusetts General Laws regarding search and seizure. In doing the acts as alleged above, defendants, and each of them, intended to cause or to place plaintiff in apprehension of a harmful and offensive contact with plaintiff's person.
3. As a result of defendant's acts as alleged above, plaintiff, in fact, was placed in great apprehension of a harmful and offensive contact with plaintiff's person. At no time did plaintiff consent to any of the acts of defendants alleged in the action above.
4. As a proximate result of the acts of defendants, and each of them, plaintiff has suffered great damage to his reputation and embarrassment in his community, all to his damage.
5. As a further proximate result of the acts of defendant officers, plaintiff was injured in his health, strength, and activity, suffered humiliation, anxiety, mental anguish, and emotional and physical distress, sustaining shock and injury to his nervous system and person, all of which injuries have caused plaintiff to suffer physical pain and severe mental anguish, all to his damage.
6. The acts of defendants, and each of them, as herein alleged were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

1

## SECOND COUNT
(Slander)

1. Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-10 inclusive, of the First Count of the First Cause.
2. Because of the false, defamatory and public statements made by defendant Harvard Police officers, plaintiff has been unable to feel secure in his relationships with students, faculty and other people of the community with whom he formerly had contact.
3. As a proximate result, of the acts of the defendants, plaintiff has suffered great damage to his reputation and embarrassment in his community, peers have since ostracized plaintiff, and his overall good reputation in the community is threatened, all to his damage. As a further proximate result of the acts of the defendant officers, plaintiff was injured in his stature, health, strength, and activity, suffered humiliation, and anxiety, and now suffers from post-traumatic stress from the offense, all to his damage.

WHEREFORE, plaintiff prays judgment against the defendants as follows:

1. For general damages according to proof;
2. For punitive damages;
3. For reasonable attorney's fees;
4. For interest and as allowed by law;
5. For cost of suit herein incurred; and
6. For such other and further relief as the court may deem proper.

July 14, 2004

2



UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | | CIVIL ACTION |
| George Logue | l | |
| | l | CASE NO. 03-12637 DPW |
| Plaintiff | l | COMPLAINT FOR DAMAGES |
| | l | Civil Rights Violation - |
| v. | l | Intentional Infliction of |
| | l | Emotional Distress |
| Harvard University | l | |
| | l | |
| Defendant | l | (UNLIMITED CIVIL CASE) |
| | l | |
| _____ | l | |

### THIRD CAUSE
#### (Intentional Infliction of Emotional Distress)

Plaintiff alleges:

##### Parties

1. Plaintiff is currently a resident of Middlesex County, Massachusetts and a citizen of the United States.

2. Plaintiff is ignorant of true names of the defendant officers sued herein, inclusive, and therefore sues these defendants by such fictitious names according to their capacity of employment. Plaintiff will amend this complaint to allege their true names when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

3. Defendant officers 1 - 4 are, and at all times herein mentioned were, police officers employed by their codefendant Harvard University (hereafter Harvard), Massachusetts Avenue, Cambridge, Massachusetts, to protect the premises, people, and property therein.

4. Defendant, Harvard being a corporation, and at all times herein mentioned was duly organized and existing under the laws of the Commonwealth of Massachusetts. Harvard has it's principal place of business in Cambridge, Middlesex County, Massachusetts, and is, and at all times herein mentioned, was regularly engaged in providing University instruction and research.

5. Defendant officers 1 - 4 at all times herein mentioned were the agents and employees of their codefendant Harvard, and in doing these things hereinafter alleged were acting under the direction and approval, express or implied, of their employer, Harvard. Plaintiff is informed and believes, and thereon alleges that the named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiffs damages as herein alleged were proximately caused by their conduct.

1

### Jurisdiction

6. A notice of this impending claim was presented to the immediate governing body of each department involved, as well as the President of the University. Copies of the notice are annexed as "A." This court has jurisdiction over this matter, pursuant to title 42 U.S.C, and plaintiff beseeches this court in order that an impartial forum is available.

### Facts

7. On or about October 14, 2002, plaintiff was visiting the Harvard Law Library at Harvard University, whereupon it was established by inquiry to the librarians, that he was welcome as a guest to use certain resources for his personal research. Plaintiff asked if there were any other requirements at the library, whereupon he was informed that for the resources he intended to use, there were no other requirements. Since that time, plaintiff had visited Harvard several times a week to utilize resources at the library, including, the bookstores and on January 2, 2003, and while visiting the Harvard Coop, plaintiff was searching for legal paper on which he intended to print legal documents to be submitted to the Court. A sales representative informed plaintiff that, "the only local store that sells that paper is the bookstore in Harkens Hall at Harvard Law School."

8. On January 3, 2003, at approximately 9:45 a.m., defendant officers 1 and 2, and each of them, stopped, detained, threatened and, otherwise began to harass plaintiff while he was walking peaceably and in a law abiding manner through the lobby of, and while en route to the Harvard Law School bookstore in Harkens Hall. The officers, and each of them, questioned his identity and reason for being at Harvard. Plaintiff explained the research he was doing and his understanding that it was okay for him to be there. Defendant officers, and each of them proceeded to keep plaintiff, by force and threats, and against his will at this location, accused him publicly of having committed a crime of trespass and began to question him further regarding his reason for being in Harkens Hall and on Harvard property. Plaintiff, in fear of being wrongfully accused of a crime, at first requested counsel and was denied by officers 1 and 2, who called for backup. Defendant officers 3 and 4 arrived, and each of them continued to detain plaintiff, forcing him to remove his backpack, remain seated, and answer questions by intimidating him for more than an hour. Defendant officers 2 and 3 departed shortly thereafter. Defendant officer 1 asked if he could look in plaintiff's grocery bag. Upon plaintiff's denial, officers 1 and 4, and each of them, forced plaintiff to get on his knees as students passed by, began to search his belongings, remove and examine articles, and publicly accuse and rebuke him, again, of breaking the law by possessing illegal substances. Plaintiff denied the allegation. Defendant officers, and each of them searched his belongings without probable cause, violating his fourth amendment right which states in part, "...the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures..." When officers realized that the items were of no consequence, they threatened plaintiff never to return to the Harvard campus and told him to leave. By committing these acts, defendant officers, and each of them, denied plaintiff of his civil liberties, by acting under color of state law. 42 U.S.C.S. 1983 (1988).

9. The unlawful conduct of the defendant police officers, and each of them, deprived the plaintiff of his personal liberty, where he was humiliated and embarrassed in public, and as a result, suffered great pain and anguish of the mind. Further, as a proximate result, of the acts of the defendants, plaintiff has suffered great damage to his reputation and embarrassment in *his* community, all to his damage.

10. Defendant officer's egregious acts were intentional, were unreasonable and unnecessary for the purpose of any investigation, or to enforce any law, as the plaintiff had not ventured beyond those locations to which he had received permission to be or had been directed. Further, defendant's knowledge that the plaintiff was visibly upset as a result of the detention, that plaintiff was very cognizant of where he was allowed to be, that by stopping him in a space that was not a violation, and treating him, as described, in front of other students, and observing that plaintiff was becoming visibly distraught as a result of defendant's actions, ratified that the officers overall conduct was done with knowledge that plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to plaintiff.

11. As a further proximate result of the acts of defendant officers, plaintiff was injured in his health, strength, and activity, suffered humiliation, anxiety, mental anguish, and emotional and physical distress, sustaining shock and injury to his nervous system and person, all of which injuries have caused plaintiff to suffer physical pain, including recurrent physical symptoms and severe mental anguish. These injuries have also caused a fear of law enforcement personnel and loss of respect and trust for all police, and inherent and recurrent sustained feelings of agitation, irritability, and anxiety, all to his damage. The acts of defendants, and each of them, as herein alleged were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary damages.

WHEREFORE, plaintiff prays judgment against defendant as follows:

1. For general damages according to proof;
2. For punitive and exemplary damages, amount demanded 2,000,000.00;
3. For reasonable attorney's fees;
4. For interest and as allowed by law;
5. For cost of suit herein incurred; and
6. For such other and further relief as the court may deem proper.

July 14, 2004

3

Plaintiff's Affidavit

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION

|  |  |  |
|---|---|---|
| George Logue | l | Case No: 03-12637 - DPW |
|  | l |  |
| Plaintiff | l |  |
|  | l |  |
| v. | l |  |
|  | l |  |
| Harvard University, et al. | l |  |
|  | l |  |
| Defendant | l |  |
|  | l |  |

## AFFIDAVIT SUPPORTING PLAINTIFF'S OPPOSITION
## TO THE DEFENDANT'S SUMMARY JUDGMENT MOTION

1   I am currently a resident of the state of Massachusetts, Middlesex County. I have personal knowledge of the matters set forth in this declaration, and if called to testify with respect thereto, could and would do so competently under oath.

2   On December 15, 2003 I filed a complaint in U.S. District Court against Harvard University (attch., preceding) and, several police employed by Harvard. The contents of the complaint, particularly paragraphs seven and eight, describe plaintiff's version of the events of January 3, 2003, in which he was unreasonably detained and searched without probable cause. The following reaffirms events:

a. On January 3, 2003, at approximately 10 a.m., plaintiff was en route to the Harvard University Law School Bookstore, located in Harkness Hall (also referred to as Harkness Common). He had been instructed by personnel at the main bookstore, as to where to find court approved law paper. Plaintiff had been informed this was the only local retail outlet where he would find this formal law paper, and where the main bookstore did not carry it.

b. While traversing Harkness Hall, plaintiff was detained by defendant Marren, of the Harvard University Police. Marren was accompanied by a partner. The defendants, questioned his identity and reason for being at Harvard. Plaintiff stated he was in search of paper at the bookstore and explained the research he was doing and his understanding that it was okay for him to be there.

c. Defendant Marren, and his partner kept plaintiff, by force and intimidation, and against his will at that location, accused him publicly of having committed a crime of trespass and began to question him further regarding his reason for being in Harkness Hall and on Harvard property. Plaintiff, because of a recent similar

1

experience, and in fear of being wrongfully accused of a crime, at first requested counsel and was denied by defendants, and who then began to run a "cory" and who called for backup.

d. Marren asked to inspect plaintiff's backpack and person, upon which plaintiff deferred, questioning the need, and where he had explained his reason, and believed right to be getting paper at the law bookstore located in that building. Two other defendants arrived and looked on for a lesser period, despite plaintiff's outrage at how he was being treated as students passed by. Marren proceeded to ransack the backpack anyway, by removing, opening, unfoldiing and inspecting all of its contents, and asking plaintiff what articles he had on his possession, and forcing him to place those articles on a table.

e. Marren and a partner asked if plaintiff had ever been arrested. Upon plaintiff's response, Marren immediately thereafter spent a lengthy period (20 – 30 minutes) conversing over the radio with his department.   Plaintiff overheard Morron requesting someone to call MIT and find out what had transpired there.  Plaintiff verbally objected to the treatment and the amount of time he was being detained. With their hands on their hips, defendants instructed plaintiff to "relax!"

f. Shortly thereafter, defendants instructed plaintiff that he could repack his belongings in his backpack.  Two of the defendants departed.  Marren issued his verbal trespass warning out loud and clear to all passing by.  Then he and another plainclothesman (believed to be an officer) began escorting plaintiff to an exit.

g. Upon reaching the exit, defendant Marren asked what plaintiff was carrying in his grocery bag, and if he could inspect it? Upon plaintiff's answer of "no," Morron forced plaintiff to get on his knees as students passed by, and began to search his belongings, remove and examine articles, and publicly accuse and rebuke him, of breaking the law by possessing illegal substances!  The plainclothesman leaned against the wall and looked on during this period, while plaintiff denied the allegation and became distraught; imagining how it looked to the passing students.

h. When defendants realized that the items were of no consequence, they repeated the warning.  Plaintiff began to ask a question and the plainclothesman threatened him, in a loud voice, never to return to the Harvard campus, again and then told him to leave.

3  Where defendant's names were unknown previously, only partial disclosure has revealed some of the defendants that were present. Defenses automatic disclosures, and answers to interrogatories (attch A) has failed to verify who was who, or the name of the plainclothesman. The defendant's names were to be incorporated into an amended complaint with other details forthcoming as a result of disclosure per direction of the original court order.  This task was not completed due to the

incomplete disclosure, as well as unforeseen issues pertaining to plaintiff's means of taking depositions and completing discovery (please see docket items 22 and 23).

4  On September 18, 2005, plaintiff returned once again to the main Harvard Bookstore and spoke with two store managers at length. They repeated, that the formal law paper plaintiff had sought in 2003, is still only locally sold in the law school store, and reassured him he would have been advised to go there to find it.

I declare under the laws of the United States of America and under the penalty of perjury that the foregoing is true and correct.

September 23, 2005      10/12/05
composed on

3



UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 OCT 12 ₽ 2:51

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION

| | | |
|---|---|---|
| George Logue | 1 | CASE NO <u>03-12637</u>- DPW |
| | 1 | |
| Plaintiff | 1 | |
| | 1 | |
| v. | 1 | |
| | 1 | |
| Harvard Police | 1 | |
| | 1 | |
| Defendants | <u>1</u> | |
| | 1 | |

## PLAINTIFF'S INTERROGATORIES (1) TO DEFENDANTS

Plaintiff, George Logue hereby propounds upon defendants the following First Set of Interrogatories. Defendant is instructed to serve their respective and timely answers upon plaintiff within the time specified by the Federal Rules of Civil Procedure, Rule 33(b)(3).

Kowtowski

1. Please state your full name, Date of Birth, and position.

2. Please state your affiliation with the named defendants regarding the incident in this case.

reprint
Not anoriginal