UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| George Logue | CIVIL ACTION |
| Plaintiff | CASE NO. 03-12637- DPW<br>COMPLAINT FOR DAMAGES<br>Civil Rights Violation - |
| v. | Wrongful Detention, Illegal Search |
| The President and Fellows of Harvard<br>Harvard University Police Department, et al. |  |
| Defendants | (UNLIMITED CIVIL CASE) |

Comes now the plaintiff with the following civil rights suit in this AMENDED complaint and the causes described herein, pursuant to U.S.C. Title 42.

FIRST CAUSE
(Wrongful Detention & Illegal Search)

Plaintiff alleges:

Parties

1. Plaintiff is currently a resident of Middlesex County, Massachusetts and a citizen of the United States.
2. Plaintiff is uninformed as to the true name of all of the defendant officers sued herein, inclusive, and therefore defendants are named where knowledge exists, but where it is not he sues the defendants, unknown by name, by such fictitious names according to their believed capacity of employment. Plaintiff is informed and believes and thereon alleges that each of the identified and named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.
3. Defendant officers, Marren, Healy, DiVergilio, Twomey, and "supervisor in plain clothes" (hereafter SPC) are, and at all times herein mentioned were, police officers employed by their codefendant The President and Fellows of Harvard University, Massachusetts Avenue, Cambridge, Massachusetts, to protect the premises, people, and property therein.
4. Defendants, The President and Fellows of Harvard University, being a corporation, and at all times herein mentioned were duly organized and existing under the laws of the Commonwealth of Massachusetts. The President and Fellows of Harvard University have their principal place of business in Cambridge, Middlesex County, Massachusetts, and are, and at all times herein mentioned, were regularly engaged in administering over and providing college instruction and research.
5. Defendant officers Marren, Healy, DiVergilio, Twomey, and SPC, and at all times herein mentioned were the agents and employees of their codefendants The President and Fellows of Harvard University, and in doing these things hereinafter alleged were acting under the direction and approval, express or implied, of their employer, "Harvard."

1

Plaintiff is informed and believes, and thereon alleges that the named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

## Jurisdiction

6. A notice of this impending claim was originally presented to the President of Harvard University, as well as the Harvard Police Department. Copies of the notice are annexed as "A." in the original complaint. This Honorable Court has jurisdiction over this matter, where no response to the notice was received and the complaint, pursuant to title 42 U.S.C., was filed. Plaintiff has brought forth this complaint to this court seeking an objective review of the allegations in hope of attaining a fair judgment on the evidence.

## Facts

7. On or about October 14, 2002, plaintiff was visiting the Harvard Law Library at Harvard University, whereupon it was established by inquiry to the librarians, that he was welcome as a guest to use certain resources for his personal research. Plaintiff asked if there were any other requirements at the library, whereupon he was informed that for the resources he intended to use, there were no other requirements. Since that time, plaintiff had visited Harvard several times a week to utilize resources at the library, including, the bookstores and on January 2, 2003, and while visiting the Harvard Bookstore, plaintiff was searching for legal paper on which he intended to print legal documents to be submitted to the Court. A sales representative informed plaintiff that, "the only local store that sells that paper is the bookstore in Harkness Hall at Harvard Law School."

8. On January 3, 2003, at approximately 9:45 a.m., defendant officers 1 and 2, and each of them, stopped, detained, threatened and, otherwise began to harass plaintiff while he was walking peaceably and in a law abiding manner through the lobby of, and while en route to the Harvard Law School bookstore in Harkness Hall. He had been instructed by personnel at the main bookstore, that this was the only local retail outlet where he would find formal law paper he sought. The officers, and each of them, questioned his identity and reason for being at Harvard. Plaintiff explained his search for the paper and the research he was doing and his understanding that it was okay for him to be there. Defendant officers, and each of them proceeded to keep plaintiff, by force and threats, and against his will at this location, accused him publicly of having committed a crime of trespass and began to question him further regarding his reason for being in Harkness Hall and on Harvard property. Plaintiff, in fear of being wrongfully accused of a crime, at first requested counsel and was denied such by defendant Marren and his partner(s), who called for backup and began to run a "cory." Defendant officers 3 and 4 arrived, and each of defendants continued to detain plaintiff, forcing him to remove his backpack, remain seated, and answer questions by intimidating him for more than an hour. Defendant Marren asked to inspect plaintiff's backpack and person. Plaintiff said no, questioning the need, and where he had explained his reason, and believed right to be getting paper at the law bookstore located in that building  Marren proceeded to ransack the backpack anyway, by removing, opening, unfoldiing and inspecting all of its contents, and asking plaintiff what articles he had on his possession, and forcing him to place those articles on a table. Marren and a partner asked if plaintiff had ever been arrested. Plaintiff explained that a couple weeks earlier he had been falsely arrested for tresspassing, without reason and with no probable cause, at MIT. Thereafter, defendant

2

Marren spent 20 – 30 minutes conversing over the radio with his department.

Plaintiff overheard defendant Marren requesting someone to call MIT and find out what had occurred there. Plaintiff verbally objected to the treatment and that he was being detained for so long. With their hands on their hips, defendants instructed plaintiff to "relax!" Defendants instructed plaintiff that he could repack his belongings in his backpack. Two of the defendant officers departed shortly thereafter and defendant Marren issued a verbal trespass warning. Then while escorting plaintiff to an exit, defendant Marren and another plainclothesman, defendant SPC, began to inquire about the other bag plaintiff was carrying. Upon reaching the exit, defendant Marren asked if he could look in plaintiff's grocery bag. When plaintiff expressed his displeasure, defendants Marren and SPC, and each of them, forced plaintiff to get on his knees as students passed by, began to search his belongings, remove and examine the articles contained therein, and publicly accuse and rebuke him, again, of doing wrong by possessing illegal substances. Defendant SPC leaned against the wall and looked on during this period, while plaintiff denied the allegation and became distraught; imagining how it looked to the passing students. Marren searched plaintiff's belongings without probable cause, violating his fourth amendment right which states in part, "…the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." When the defendants realized the items were of no consequence, they threatened plaintiff never to return to the Harvard campus. By committing each of these acts, defendants, and each of them, denied plaintiff of his civil liberties, by acting under color of state law, 42 U.S.C.S. 1983 (1988).

9. The unlawful conduct of the defendant police officers, and each of them, deprived the plaintiff of his personal liberty, where he was humiliated and embarrassed in public, and as a result, suffered great pain and anguish of the mind. Further, as a proximate result, of the acts of the defendants, plaintiff has suffered great damage to his reputation and embarrassment in his community, all to his damage.
10. The acts of defendants, and each of them, as herein alleged were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

## SECOND COUNT OF FIRST CAUSE
(Negligent Entrustment)

1. Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1 - 10, inclusive, of the First Count.
2. The defendants President and Fellows of Harvard University negligently entrusted defendant police officers Marren, Healy, DiVergilio, Twomey, and SPC whereby they hired them, failed to train them properly and or retained them, and supervised them to protect the University property and premises and to investigate possible harm to those properties or premises and to perform other related functions.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 OCT 25 P 3: 04

|  |  |
|---|---|
| George Logue | CIVIL ACTION |
|  | |
|  | CASE NO. 03-12637 - DPW |
| Plaintiff | COMPLAINT FOR DAMAGES |
|  | Civil Rights Violation - |
| v. | Assault & Battery |
|  | |
| The President and Fellows of Harvard | |
| Harvard University Police University, et al. | |
|  | |
| Defendants | (UNLIMITED CIVIL CASE) |

SECOND CAUSE
(Assault & Battery)

Plaintiff alleges:

1. Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-10, inclusive, of the First Count of the First Cause.
2. Defendant's egregious acts, and each of them, were intentional, unconsented, and harmful to plaintiff, were unreasonable and unnecessary for the purpose of any investigation, and violated the scope of Massachusetts General Laws regarding search and seizure. In doing the acts as alleged above, defendants, and each of them, intended to cause or to place plaintiff in apprehension of a harmful and offensive contact with plaintiff's person.
3. As a result of defendant's acts as alleged above, plaintiff, in fact, was placed in great apprehension of a harmful and offensive contact with plaintiff's person. At no time did plaintiff consent to any of the acts of defendants alleged in the action above.
4. As a proximate result of the acts of defendants, and each of them, plaintiff has suffered great damage to his reputation and embarrassment in his community, all to his damage.
5. As a further proximate result of the acts of defendant officers, plaintiff was injured in his health, strength, and activity, suffered humiliation, anxiety, mental anguish, and emotional and physical distress, sustaining shock and injury to his nervous system and person, all of which injuries have caused plaintiff to suffer physical pain and severe mental anguish, all to his damage.
6. The acts of defendants, and each of them, as herein alleged were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

## SECOND COUNT OF SECOND CAUSE
(Libel & Slander)

1. Plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-10, inclusive, of the First Count of the First Cause.
2. Because of the false, defamatory and public statements made by defendant Harvard Police officers, and the inherent files created and maintained therein, plaintiff has been unable to feel secure in his relationships with students, faculty and other people of the surrounding community with whom he formerly had contact.
3. As a proximate result, of the acts of the defendants, plaintiff has suffered great damage to his reputation and embarrassment in his community, peers have since ostracized plaintiff, and his overall good reputation in the community is threatened, all to his damage. As a further proximate result of the acts of the defendant officers, plaintiff was injured in his stature, health, strength, and activity, suffered humiliation, and anxiety, and has suffered from post-traumatic stress resulting from the offense, all to his damage.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 OCT 25 P 4: 03

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| George Logue ] | CIVIL ACTION |
| ] | CASE NO. 03-12637 - DPW |
| Plaintiff ] | COMPLAINT FOR DAMAGES |
| ] | Civil Rights Violation - |
| v. ] | Intentional Infliction of |
| ] | Emotional Distress |
| The President and Fellows of Harvard ] | |
| Harvard University Police Department, et al. ] | |
| ] | |
| Defendants ] | (UNLIMITED CIVIL CASE) |
| ] | |

THIRD CAUSE
(Intentional Infliction of Emotional Distress)

Plaintiff alleges:

Parties

1. Plaintiff is currently a resident of Middlesex County, Massachusetts and a citizen of the United States.
2. Plaintiff is uninformed as to the true name of all of the defendant officers sued herein, inclusive, and therefore defendants are named where knowledge exists, but where it is not he sues the defendants, unknown by name, by such fictitious names according to their believed capacity of employment. Plaintiff is informed and believes and thereon alleges that each of the identified and named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.
3. Defendant officers, Marren, Healy, DiVergilio, Twomey, and "supervisor in plain clothes" (hereafter SPC) are, and at all times herein mentioned were, police officers employed by their codefendant The President and Fellows of Harvard University, Massachusetts Avenue, Cambridge, Massachusetts, to protect the premises, people, and property therein.
4. Defendants, The President and Fellows of Harvard University, being a corporation, and at all times herein mentioned were duly organized and existing under the laws of the Commonwealth of Massachusetts. The President and Fellows of Harvard University have their principal place of business in Cambridge, Middlesex County, Massachusetts, and are, and at all times herein mentioned, were regularly engaged in administering over and providing college instruction and research.
5. Defendant officers Marren, Healy, DiVergilio, Twomey, and SPC, and at all times herein mentioned were the agents and employees of their codefendants The President and Fellows of Harvard University, and in doing these things hereinafter alleged were acting under the direction and approval, express or implied, of their employer, "Harvard." Plaintiff is informed and believes, and thereon alleges that the named defendants are responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.

7

### Jurisdiction

6. A notice of this impending claim was originally presented to the President of Harvard University, as well as the Harvard Police Department. Copies of the notice are annexed as "A." in the original complaint. This Honorable Court has jurisdiction over this matter, where no response to the notice was received and the complaint, pursuant to title 42 U.S.C., was filed. Plaintiff has brought forth this complaint to this court seeking an objective review of the allegations in hope of attaining a fair judgment on the evidence.

### Facts

7. On or about October 14, 2002, plaintiff was visiting the Harvard Law Library at Harvard University, whereupon it was established by inquiry to the librarians, that he was welcome as a guest to use certain resources for his personal research. Plaintiff asked if there were any other requirements at the library, whereupon he was informed that for the resources he intended to use, there were no other requirements. Since that time, plaintiff had visited Harvard several times a week to utilize resources at the library, including, the bookstores and on January 2, 2003, and while visiting the Harvard Bookstore, plaintiff was searching for legal paper on which he intended to print legal documents to be submitted to the Court. A sales representative informed plaintiff that, "the only local store that sells that paper is the bookstore in Harkness Hall at Harvard Law School."

8. On January 3, 2003, at approximately 9:45 a.m., defendant officers 1 and 2, and each of them, stopped, detained, threatened and, otherwise began to harass plaintiff while he was walking peaceably and in a law abiding manner through the lobby of, and while en route to the Harvard Law School bookstore in Harkness Hall. He had been instructed by personnel at the main bookstore, that this was the only local retail outlet where he would find formal law paper he sought. The officers, and each of them, questioned his identity and reason for being at Harvard. Plaintiff explained his search for the paper and the research he was doing and his understanding that it was okay for him to be there. Defendant officers, and each of them proceeded to keep plaintiff, by force and threats, and against his will at this location, accused him publicly of having committed a crime of trespass and began to question him further regarding his reason for being in Harkness Hall and on Harvard property. Plaintiff, in fear of being wrongfully accused of a crime, at first requested counsel and was denied such by defendant Marren and his partner(s), who called for backup and began to run a "cory." Defendant officers 3 and 4 arrived, and each of defendants continued to detain plaintiff, forcing him to remove his backpack, remain seated, and answer questions by intimidating him for more than an hour. Defendant Marren asked to inspect plaintiff's backpack and person. Plaintiff said no, questioning the need, and where he had explained his reason, and believed right to be getting paper at the law bookstore located in that building  Marren proceeded to ransack the backpack anyway, by removing, opening, unfoldiing and inspecting all of its contents, and asking plaintiff what articles he had on his possession, and forcing him to place those articles on a table. Marren and a partner asked if plaintiff had ever been arrested. Plaintiff explained that a couple weeks earlier he had been falsely arrested for tresspassing, without reason and with no probable cause, at MIT. Thereafter, defendant Marren spent 20 – 30 minutes conversing over the radio with his department.

Plaintiff overheard defendant Marren requesting someone to call MIT and find out what had occurred there. Plaintiff verbally objected to the treatment and that he was being detained for so long. With their hands on their hips, defendants instructed plaintiff to "relax!" Defendants instructed plaintiff that he could repack his belongings in his backpack. Two of the defendant officers departed shortly thereafter and defendant Marren issued a verbal trespass warning. Then while escorting plaintiff to an exit, defendant Marren and another plainclothesman, defendant SPC, began to inquire about the other bag plaintiff was carrying. Upon reaching the exit, defendant Marren asked if he could look in plaintiff's grocery bag. When plaintiff expressed his displeasure, defendants Marren and SPC, and each of them, forced plaintiff to get on his knees as students passed by, began to search his belongings, remove and examine the articles contained therein, and publicly accuse and rebuke him, again, of doing wrong by possessing illegal substances. Defendant SPC leaned against the wall and looked on during this period, while plaintiff denied the allegation and became distraught; imagining how it looked to the passing students. Marren searched plaintiff's belongings without probable cause, violating his fourth amendment right which states in part, "...the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." When the defendants realized the items were of no consequence, they threatened plaintiff never to return to the Harvard campus. By committing each of these acts, defendants, and each of them, denied plaintiff of his civil liberties, by acting under color of state law, 42 U.S.C.S. 1983 (1988).

9. The unlawful conduct of the defendant police officers, and each of them, deprived the plaintiff of his personal liberty, where he was humiliated and embarrassed in public, and as a result, suffered great pain and anguish of the mind. Further, as a proximate result, of the acts of the defendants, plaintiff has suffered great damage to his reputation and embarrassment in his community, all to his damage.

10. Defendant officer's egregious acts were intentional, were unreasonable and unnecessary for the purpose of any investigation, or to enforce any law, as the plaintiff had not ventured beyond those locations to which he had received permission to be or had been directed. Further, defendant's knowledge that the plaintiff was visibly upset as a result of the detention, that plaintiff was very cognizant of where he was allowed to be, that by stopping him in a space that was not a violation, and treating him, as described, in front of other students, and observing that plaintiff was becoming visibly distraught as a result of defendant's actions, ratified that the officers overall conduct was done with knowledge that plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to plaintiff.

11. As a further proximate result of the acts of defendant officers, plaintiff was injured in his health, strength, and activity, suffered humiliation, anxiety, mental anguish, and emotional and physical distress, sustaining shock and injury to his nervous system and person, all of which injuries have caused plaintiff to suffer physical pain, including recurrent physical symptoms and severe mental anguish. These injuries have also caused a fear of law enforcement personnel and loss of respect and trust for all police, and inherent and recurrent sustained feelings of agitation, irritability, and anxiety, all to his damage. The acts of defendants, and each of them, as herein alleged were willful, wanton, malicious, and oppressive, and justify the awarding of exemplary damages.

WHEREFORE, plaintiff prays judgment against defendant as follows:

1. For general damages according to proof;
2. For punitive and exemplary damages, amount demanded <u>2,000,000.00</u>;
3. For reasonable attorney's fees;
4. For interest and as allowed by law;
5. For cost of suit herein incurred; and
6. For such other and further relief as the court may deem proper.

<u>October 25, 2005</u>         *[signature]*

## CERTIFICATE OF SERVICE

I, George Logue, plaintiff, hereby certify that on the 25th of October, 2005 I caused a true copy of the documents above to be served on the opposing parties as listed below, by serving one copy of same via first class mail postage paid.

*/s/ George Logue*

Mr. Robert Healy
Melick, Porter, & Shea
28 State Street
Boston, MA